STATE OF NEW YORK
ATTORNEY GENERAL
MANAGING ATTY'S OFC
RECEIVED-NYC

2025 OCT 27 PM 12: 11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NAJAI FREEMAN, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>TRIUMPH HOSPITALITY LLC; SHIMMIE HORN; GERALD BARAD; KELLI PHILLIPS; and JAY HELMS<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Najai Freeman, individually and on behalf of all other similarly situated current and former employees of Defendant Triumph Hospitality LLC, ("Triumph"), brings this Collective and Class Action against Defendants and alleges as follows:

## OVERVIEW

1. Ms. Freeman brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover unpaid overtime compensation. She brings these claims as a collective action on behalf of herself and all current or former staff employed by Triumph Hotels LLC within the three (3) years preceding the filing of a consent to sue.

2. Ms. Freeman also brings claims under New York's wage-and-hour laws, including New York Labor Law ("NYLL") Articles 6 and 19 and their implementing regulations, both individually and as a class action pursuant to Fed. R. Civ. P. 23 ("New York Class") for Defendants' failure to pay overtime wages for all hours worked and for Defendants' wage statement violations.

3. Ms. Freeman also brings claims under New York State's Human Rights Law for Defendants' discrimination against her on the basis of race and sex.

4. Ms. Freeman also brings claims under New York City's Human Rights Law for Defendants' discrimination against her on the basis of race and sex.

5. Ms. Freeman also brings claims under NYLL Article 7 and its implementing regulations for Triumph's termination of Freeman's employment in retaliation for reporting that she was not receiving overtime compensation that was due to her.

6. Ms. Freeman also brings claims under New York State's Human Rights Law for Triumph's termination of Freeman's employment in retaliation for her reporting that she experienced racial discrimination and sexual harassment.

7. Ms. Freeman also brings claims under New York City's Human Rights Law for Triumph's termination of Freeman's employment in retaliation for her reporting that she experienced racial discrimination and sexual harassment.

## ADMINISTRATIVE PROCEDURES

8. Pursuant to NYLL § 215(2)(b), Plaintiff will serve a copy of this Complaint upon the New York Attorney General at the time of the commencement of this action.

9. Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within 10 days of its filing, thereby satisfying the notice requirements of this action.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this collective action is brought under §216(b) of the FLSA.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1337 because the claims arise under federal laws regulating commerce.

12. This Court has supplemental jurisdiction over the state and municipal law claims by virtue of 28 U.S.C. §1367(a) because the state and municipal law claims are so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiffs worked for Triumph in this District, the acts and/or omissions giving rise to the claims herein alleged took place in this District, and Triumph conducts business in this District.

## PARTIES

**Plaintiffs**

14. Plaintiff NAJAI FREEMAN is a Black woman and a former employee of Triumph.

15. Ms. Freeman worked for Triumph as a Guest Relations Ambassador from about June 2024 to January 2025.

16. Ms. Freeman worked for Triumph in New York, at the Iroquois Hotel in Manhattan.

17. During her time at the Iroquois Hotel, Ms. Freeman was the only Black woman working at the front desk.

18. Ms. Freeman's consent to sue is attached hereto as Exhibit 1.

19. Ms. Freeman is now, and during her employment with Triumph was, a resident of New Jersey.

20. The term "Plaintiffs" as used in this complaint refers to Ms. Freeman and any and all putative FLSA or New York Class Members, as defined below.

**Defendants**

21. Defendant TRIUMPH HOSPITALITY LLC is a New York corporation that operates the Iroquois Hotel at 1633 Broadway, 46th Floor; New York, NY 10019.

22. Upon information and belief, defendant SHIMMIE HORN is co-owner of Triumph Hospitality LLC.

23. Upon information and belief, defendant GERALD BARAD is co-owner of Triumph Hospitality LLC.

24. Defendant KELLI PHILLIPS is the General Manager at the Iroquois Hotel.

25. Defendant JAY HELMS is the Director of Front Office at the Iroquois Hotel.

## FLSA COVERAGE

26. At all times hereinafter mentioned, Triumph is and has been an employer within the meaning of 29 U.S.C. § 203(d).

27. At all times hereinafter mentioned, Triumph is and has been an enterprise within the meaning of 29 U.S.C. § 203(r).

28. At all times hereinafter mentioned, Triumph has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in

that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

29. At all times hereinafter mentioned, Plaintiffs were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

## FACTS

### Wage and Hour Claims

30. Ms. Freeman was employed by Triumph as a Guest Relations Ambassador at the Iroquois Hotel in Manhattan.

31. Throughout her employment, Ms. Freeman frequently worked more than 40 hours in one week.

32. Ms. Freeman believes her punch-in and punch-out times should be accurately reflected on the thumbprint timekeeping system used by the Iroquois Hotel.

33. Ms. Freeman did not have access to data regarding her punch-in and punch-out times—only management had access to this system.

34. Ms. Freeman's pay statements frequently reflected exactly 40 hours of work even when she worked more than 40 hours in the relevant week.

35. Ms. Freeman's supervisor, Jay Helms, shared with her that it was difficult for Triumph to determine who does and does not work overtime, and so they just paid employees for exactly 8 hours of work per day.

36. Ms. Freeman is aware of other current and former employees of Triumph who were subject to the same payroll practices described above.

37. The wage statements that Triumph provided to Ms. Freeman did not list the accurate number of hours worked.

38. Ms. Freeman's inability to access an accurate statement of her hours worked harmed her ability to advocate that Triumph pay her overtime as it was legally required to do.

39. Triumph willfully violated the FLSA.

40. Triumph willfully failed to pay Plaintiffs, including Ms. Freeman, for all hours worked.

## Individual Claims

### I. Ms. Freeman is not paid overtime pay despite working overtime hours

41. Ms. Freeman was scheduled to work from 7am to 3:30pm, including a lunch break. Because she rarely took a lunch break, she would need to clock out at 3:00pm to have an 8 hour day. Ms. Freeman frequently clocked out later than 3:00pm even though she did not take lunch. For example, on August 15, 2024, she clocked out at 3:40pm. On August 16, 2024, she clocked out at 3:17pm. And on August 17, 2024, she clocked out at 3:11pm. She did not take lunch on any of these days, and she was not paid overtime for the additional hours worked beyond 40 in that week.

42. While Ms. Freeman was working at the front desk, Mr. Helms saw Ms. Freeman composing an email to him and Anna Bernatowicz about her owed overtime pay for the week of August 12, 2024. The email stated in part, "I am sending this email to ask that my punches and overtime this week and any week moving forward please be reflected during payroll." Mr. Helms discouraged her from submitting a written complaint stating in sum and substance, "you don't have to send it. I see it." But his practices did not change.

43. In September or October of 2024, Freeman approached her supervisor, Mr. Helms, and asked if she should record her overtime hours. His response was "Really, for 15 minutes?" He added that the two of them would have to talk with Ms. Phillips and that he didn't "know how to feel" about Ms. Freeman's request.

44. On another occasion, Ms. Freeman worked overtime on two consecutive days. On the first day, Ms. Freeman filled out an overtime form for herself because Mr. Helms was not working with her that day. On the second day, Mr. Helms was there and he filled out the form. Ms. Freeman was only paid for overtime for the day Mr. Helms filled out the form, even though she followed the proper process both times. This is one of the few times Ms. Freeman was compensated for her overtime hours, even though she would fill out the required forms. Though the submitted forms would go to Mr. Helms's mailbox, it seems that the forms often were not entered into the system.

45. Ms. Freeman also raised with Ms. Phillips, the General Manager of the Iroquois Hotel that she was not paid overtime for the hours she worked in excess of 40 hours per week.

## II. <u>At Iroquois, Ms. Freeman experiences discrimination and harassment on the basis of her race, and her workplace was permeated with racially discriminatory intimidation, ridicule, and insult.</u>

46. During her time working at Iroquois, Ms. Freeman was frequently made uncomfortable by remarks made by her supervisor, Mr. Helms, that expressed stereotypes about her race.

47. On one occasion when Mr. Helms observed Freeman using lotion, he stated, "You know Black people just use lotion because they don't want to be ashy."

48. During her time working at Iroquois, Ms. Freeman was frequently made uncomfortable by remarks made by her supervisor, Mr. Helms, about Black women's hair and features. Mr. Helms would express shock when Black women's appearance diverged from his stereotypes.

49. On one occasion, Mr. Helms asked Ms. Freeman if she thought a co-worker Savannah Boyd's, hair was real. Ms. Boyd is a Black woman. Ms. Freeman responded, "Yes Black women can have straight hair."

50. Ms. Freeman's own appearance was a subject of criticism in ways that no other employee's was.

51. At her 60-day review, Mr. Helms and Ms. Phillips gave Ms. Freeman only one piece of feedback—they told Ms. Freeman she needed to smile more. Ms. Phillips told Ms. Freeman that she and Mr. Helms could tell Ms. Freeman was "in her head" by the look on her face. Ms. Freeman replied that she was just thinking.

52. Ms. Freeman knows of no other employee who received such feedback, and she did not observe herself to smile less than anyone else. As the only Black woman working at the front desk, Ms. Freeman was the only one who was specifically asked to smile more or be mindful of her facial expressions.

53. At the same time that Mr. Helms expressed stereotypical views of Black people, and particularly Black women, Mr. Helms also discounted and denied positive associations of and with Black people when Ms. Freeman expressed them.

54. On one occasion, a Black family came into the hotel. Ms. Freeman had an enjoyable conversation with them and when they departed, she said to Mr. Helms, "I just love my people—it always feels like a hug when you talk to them." Mr. Helms responded, "those aren't your people, everyone is your people."

55. During her time working at Iroquois, Ms. Freeman's concerns about differential treatment on the basis of race were routinely discounted and dismissed by Mr. Helms and Ms. Phillips. Indeed, Mr. Helms frequently joked that he could say the same thing to a guest that Ms. Freeman had just said and that they would react more positively because he was White.

56. On one occasion, a woman came up to the front desk. Rather than be waited on by Ms. Freeman, who was available, she waited in line to be served by Mr. Helms. Ms. Freeman

expressed to Mr. Helms afterward that this experience was frustrating and hurtful because she was kind to people and just wanted to do her job. He said, "well Indians have had it worse than Black people."

57. Ms. Freeman later told Ms. Phillips about the incident with the woman who refused to be waited on by her. She responded that "people just don't know any better" and added that "it can't have been your first time dealing with something like this."

58. In response to Ms. Freeman's concerns, Ms. Phillips began asking Ms. Freeman, "do you like working here? Do you enjoy working here?" Rather than address the issues Ms. Freeman had raised, Ms. Phillips reacted in such a way as to suggest to Ms. Freeman that raising legitimate workplace concerns indicated Ms. Freeman lacked enthusiasm or engagement in her work and that this would be held against her.

## III. **At Iroquois, Ms. Freeman experiences discrimination and harassment on the basis of her sex, and her workplace was permeated with sex-based discriminatory intimidation, ridicule, and insult.**

59. During her time working at Iroquois, Ms. Freeman was frequently made uncomfortable by remarks made by her supervisor, Mr. Helms, that were of a sexual nature.

60. In approximately September or October of 2024, Mr. Helms was on his knees behind the front desk. A guest, who was standing in front of the elevator, saw Mr. Helms, and Mr. Helms remarked, "I'm just trying to get off of my knees. You know what I mean." Ms. Freeman understood the remark to be sexual and perceived the guest to be extremely uncomfortable.

61. On the morning of October 21, 2024, Ms. Freeman arrived at the hotel for the start of her scheduled shift and told her co-worker Ms. Ben Messaoud, who was working at the front desk, that she had just been chased by an individual on the street who had exposed himself to her. Ms.

Freeman, who was visibly shaken, described the incident to Ms. Ben Messaoud as "traumatizing" and noted that she was "freaked out." Ignoring Ms. Freeman's distress, a colleague who overheard the conversation jokingly remarked to Mr. Helms, "Jay, I didn't know you were still doing stuff like that." Mr. Helms responded, "if I pulled mine out, she would want to see it."

62. Later in the day on October 21, 2024, multiple colleagues of Ms. Freeman's came up to her to tell her that Mr. Helms told them what had happened to her. One of these colleagues was Jaden Fuel, who worked as a guest services agent.

63. Another colleague, Anna Bernatowicz, who worked as assistant front office manager, later shared that Mr. Helms was laughing, joking, and making fun of Ms. Freeman as he recounted the story.

64. Ms. Freeman reported Mr. Helms's "she would like it" comment to another manager, Savannah Boyd, who worked in housekeeping. Ms. Boyd in turn shared it with Charisma Anderson (Ms. Boyd's former supervisor).

65. Ms. Anderson texted Ms. Freeman to share that she had heard what had happened to her and was sorry.

66. Rondell Huger, the bellman, shared with Ms. Freeman that Ms. Boyd had told him about the "she would like it" comment. He encouraged Ms. Freeman to report it, as did two other bellmen, Carlos Perez and John Sheppard.

67. With the ongoing encouragement of colleagues and realizing that nothing was going to change if she didn't speak up, on November 12, 2024, Ms. Freeman reported Mr. Helms's conduct of October 21, 2024, to general manager Ms. Phillips.

68. On hearing from Ms. Freeman that Mr. Helms made multiple guests and employees uncomfortable, Ms. Phillips responded in sum and substance, "that's not my experience with him. So I don't understand."

69. Ms. Freeman requested a complaint form from Ms. Phillips on November 12, 2024, but a complaint form was never provided by Ms. Phillips or anyone else at Triumph.

70. When Ms. Freeman reported Mr. Helms's "she would like it" remark, she told Ms. Phillips which other employees had witnessed him make the remark. Ms. Phillips thus knew that Ms. Ben Messaoud was there and had witnessed the incident, but Ms. Phillips did not take a statement from her.

71. After Ms. Freeman reported Mr. Helms's conduct, she was still required to work with him as usual and he remained in a position of supervisory authority over her.

72. On November 20, 2024, eight days after Ms. Freeman had reported Mr. Helms's conduct to her, Ms. Phillips called Ms. Freeman into her office. Mr. Helms was already sitting in the office when Ms. Freeman arrived. Ms. Phillips noted that she did not believe that Mr. Helms's comments to Ms. Freeman were "ill-intended".

73. Ms. Freeman is unaware of any discipline Mr. Helms may have faced, and she was never told that he faced any consequences.

74. Ms. Freeman remained under Mr. Helms's supervision and no steps were taken to address her discomfort working with him.

75. Ms. Freeman emailed Ms. Phillips, and cc'ed Triumph's director of HR, Lucy Sun, on November 21, 2024, to reiterate her deep discomfort at Mr. Helms's remarks.

76. Ms. Freeman did not receive a reply to her email.

77. On November 26, 2024, Ms. Phillips acknowledged that she saw Ms. Freeman's email and said she did not want to respond because Ms. Freeman emailed from a shared work account. Ms. Phillips said, in sum and substance, "just a head's up, send it from your personal email next time."

78. Ms. Freeman received no further follow-up to her complaint. No statement was ever taken from her regarding her experiences.

## IV. <u>Ms. Freeman suffers mental and emotional distress as a result of her experiences at the Iroquois</u>

79. Ms. Freeman came to her position at the Iroquois after having previously worked at Saks Fifth Avenue and as a teacher at the Kindercare Learning Center in Maryland. These positions helped her to develop strong problem solving, collaboration, and interpersonal communication skills.

80. When Ms. Freeman began at the Iroquois, she was working under a supervisor who she experienced as a great manager and teacher. This supervisor had inspired her to begin imagining making a career in hospitality. Now, Ms. Freeman is anxious and uncomfortable every time she applies for a job, fearful about what harm she might experience from her next manager.

81. Ms. Freeman has struggled emotionally as a result of her experiences at the Iroquois and Triumph's lack of response. Although she did not have health benefits, Ms. Freeman realized her situation was serious and began attending counseling sessions, paying out of pocket. Her first session was on December 29, 2024.

82. Ms. Freeman began attending weekly therapy sessions, as she processed significant anxiety about her next job and what she might experience there. Unfortunately, as of August 2025, she had to discontinue therapy because she could no longer afford the cost. In addition to

attempting to rob her of her dignity and self-worth, Triumph robbed Ms. Freeman of her prior belief that her employers would keep her safe from severe and pervasive misconduct.

## V. Ms. Freeman experiences retaliation, and ultimately termination, for raising legitimate and serious workplace concerns.

83. Ms. Freeman began her time at the Iroquois Hotel being recognized for her hard work and positive performance. Her 60-day review was flawless—she received no negative performance-related feedback.

84. That said, when her 90-day probationary period ended, Triumph declined to give her a $1 raise they had promised her when she was hired. The reason they gave Ms. Freeman was that she hadn't yet mastered certain tasks, but the company never trained her to do those tasks.

85. When she was hired, Ms. Freeman was told she would work a 7am to 3pm schedule, which would allow her to take public transportation to and from work.

86. After Ms. Freeman reported Mr. Helms's conduct, he began making changes to Ms. Freeman's schedule, requiring her to work at times when he knew she could not because public transportation to her home in New Jersey was no longer running.

87. Anthony Asencio, another employee, was allowed to schedule Ms. Freeman for times when Mr. Helms knew she could not work due to the limited public transportation to her home.

88. Specifically, Ms. Freeman was often scheduled to work until 6:30pm on Saturdays, even though she had to leave work by 4pm in order to take public transportation home.

89. Mr. Helms began scheduling her colleague, Ms. Ben Messaoud, to work the 7am to 3pm shift, even though Ms. Ben Messaoud was hired later than Ms. Freeman. This violated the unofficial seniority system that the Iroquois used when making shift assignments.

90. On one occasion when Mr. Helms allowed Mr. Asencio to schedule Ms. Freeman for a time when he knew she couldn't work, Ms. Freeman let Mr. Helms know before the schedule was published that she would not be able to work at that time. Mr. Helms responded, "well, you're going to have to." Ms. Freeman went to Ms. Phillips's office and let her know that she could not work the shift. Ms. Phillips directed Ms. Freeman to discuss the issue with Ms. Ben Messaoud and see if she would take the shift.

91. On January 31, 2025, Ms. Phillips called Ms. Freeman to her office to let her know that Triumph was instituting budget cuts. Ms. Phillips stated that "we usually start with housekeeping" but that they were instead eliminating Ms. Freeman's position effective immediately.

92. During the termination meeting, no representative from HR was present. Savannah Boyd, who worked in housekeeping, was asked to join the meeting, apparently without receiving any advance notice of the purpose of the meeting. After notice of the termination was given, Ms. Boyd was asked to walk Ms. Freeman out of the building

93. Ms. Boyd reported to Ms. Freeman that Ms. Phillips had told her that Ms. Freeman would be more comfortable with Ms. Boyd there instead of Mr. Helms.

94. Ironically, this was the first and only time that Ms. Freeman's discomfort working with Mr. Helms was ever acted upon in any way by Triumph.

95. Despite Triumph's representations that Ms. Freeman's position (Guest Relations Ambassador) was being eliminated due to budget cuts, in or around April 2025, Triumph hired a new Guest Relations Supervisor.

96. On information and belief, the new Guest Relations Supervisor's responsibilities overlap significantly with Ms. Freeman's responsibilities as Guest Relations Ambassador. Based on

information posted in guest reviews on websites like Trip Advisor and Booking.com, Paulisha, the new Guest Relations Supervisor is responding to guest reviews online; hosting the wine hour; and checking in guests at the front desk. Each of these was a responsibility Ms. Freeman has as Guest Relations Ambassador.

97. The timing of Ms. Freeman's termination and Defendants' pattern of prior retaliatory actions make clear that Ms. Freeman was terminated for opposing wage theft.

98. The timing of Ms. Freeman's termination and Defendants' pattern of prior retaliatory actions make clear that Ms. Freeman was terminated for making complaints about racial discrimination.

99. The timing of Ms. Freeman's termination and Defendants' pattern of prior retaliatory actions make clear that Ms. Freeman was terminated for making complaints about sex discrimination and sexual harassment.

100. The timing of Defendants' hiring of a new Guest Relations Supervisor whose responsibilities closely mirror Ms. Freeman's reveals that the reason given for Ms. Freeman's termination was pretextual.

## RULE 23 CLASS ACTION ALLEGATIONS

### I. CLASS DEFINITION

101. This is a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, brought by Plaintiff on behalf of a Proposed Class of similarly situated employees. The Proposed Class (subject to future revision as may be necessary), is defined as follows:

**All employees of Triumph who were not paid overtime wages for overtime hours worked during the applicable statute of limitations period.**

102. The unlawful conduct suffered by Plaintiff and the members of the Proposed Class, includes, but is not limited to:

- Members of the Proposed Class were routinely not paid at the required overtime rate for hours worked in excess of forty (40) hours per workweek.
- Members of the Proposed Class were routinely provided with wage statements that did not reflect their accurate hours worked.

103. Plaintiff and the Proposed Class have standing to seek such relief because of the adverse effects that Defendants' unlawful patterns, practices and/or policies have had on them individually and generally.

104. The patterns, practices and/or policies described in this Complaint demonstrate that failing to pay employees properly is not unusual at Triumph; rather, it is part and parcel to the Company's standard operating patterns, practices and/or policies.

## II. NUMEROSITY AND IMPRACTICALITY OF JOINDER

105. The members of the Proposed Class are sufficiently numerous to make joinder of their claims impracticable.

106. The exact number of Proposed Class members is unknown because such information is in the exclusive control of Defendants and requires discovery.

107. Although precise determination of the number of Proposed Class members is immeasurable at this time, it is significant and satisfies the numerosity requirement of FRCP 23(a).

## III. COMMON QUESTIONS OF LAW AND FACT

108. The claims alleged on behalf of Plaintiff and the Proposed Class raise questions of law and fact common to all Proposed Class members. Among these questions are:

- Whether members of the Proposed Class have been improperly denied pay at their overtime rate of pay for overtime hours worked.
- Whether members of the Proposed Class have been improperly denied wage statements that reflect their actual hours worked

## IV. TYPICALITY OF CLAIMS AND RELIEF SOUGHT

109. Plaintiff is a member of the Proposed Class she seeks to represent.

110. The claims of Plaintiff are typical of the claims of the Proposed Class in that they all arise from the same unlawful patterns, practices and/or policies of Defendants, and are based on the legal theory that these patterns, practices and/or policies violate legal rights.

111. Plaintiff and the members of the Proposed Class all allege that they each are the victims of unlawful failure to pay them the proper overtime rate for hours worked over 40 hours per workweek.

112. The relief that Plaintiff seeks as a result Defendants' unlawful patterns, practices, and/or policies is typical of the relief which is sought on behalf of the Proposed Class.

113. Thus, the typicality requirement of FRCP 23(a) is satisfied.

## V. ADEQUACY OF REPRESENTATION

114. The interests of Plaintiff are co-extensive with those of the Proposed Class she seeks to represent in the instant case.

115. Plaintiff is willing and able to represent the Proposed Class fairly and vigorously as they pursue their similar individual claims.

116. Plaintiff has retained counsel who are qualified and experienced in employment litigation and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

117. The combined interests, experience and resources of Plaintiff and her counsel to competently litigate the individual and class claims at issue in the instant case satisfy the adequacy of representation requirement of FRCP 23(a).

## VI. REQUIREMENTS OF RULE 23(b)(1)

118. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

119. Specifically, all evidence of Defendants' patterns, practices and/or policies and the issue of whether they are in violation of the law would be exchanged and litigated repeatedly.

120. Accordingly, certification of the Proposed Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Proposed Class and Defendants.

121. By filing this Complaint, Plaintiff is preserving the rights of Proposed Class members with respect to the statute of limitations on their claims. Therefore, not certifying a class would substantially impair and/or impede the other members' ability to protect their interests.

## VII. REQUIREMENTS OF RULE 23(b)(2)

122. Defendants have acted on grounds, described herein, generally applicable to Plaintiff and the members of the Proposed Class, by adopting and following systemic patterns, practices

and/or policies of failing to pay proper wages and provide proper wage statements to the Proposed Class.

123. These discriminatory acts are fostered by Defendants' standard patterns, practices and/or policies, are not sporadic or isolated, and support the request for final injunctive and declaratory relief with respect to Plaintiff and the Proposed Class as a whole.

124. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the Defendants' failure to pay proper wages and provide proper wage statements to the Proposed Class.

## VIII. REQUIREMENTS OF RULE 23(b)(3)

125. The common issues of fact and law affecting Plaintiff's claims and those of the Proposed Class, including, but not limited to, the common issues identified in the paragraphs above, predominate over issues affecting only individual claims.

126. A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the Proposed Class.

127. The cost of proving Defendants' pattern and practice of failing to pay proper wages and provide proper wage statements makes it impracticable for the members of the Proposed Class to pursue their claims individually.

128. The class action will not be difficult to manage for reasons including, but not limited to, the discrete organizational nature of the Proposed Class, as well as the common questions of law and fact described above.

## FIRST CAUSE OF ACTION

**(FLSA Overtime Violations, 29 U.S.C. § 201 *et seq.*)**

**Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs**

129. Plaintiff, on behalf of herself and other FLSA Collective Plaintiffs, realleges and incorporates by reference all previous paragraphs.

130. At all relevant times, Defendant Triumph has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of FLSA, 29 U.S.C. § 203.

131. Throughout the statutes of limitations period covered by these claims, Plaintiff and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per work week.

132. At all relevant times, Defendants operated under a decision, policy, and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Collective Plaintiffs the appropriate overtime rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA, even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

133. Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## <u>SECOND CAUSE OF ACTION</u>

**(New York State Overtime Violations, N.Y. Lab. Law §§ 650 *et seq.*, N.Y. Comp. Codes R. & Regs. Tit. 12, §146-1.4)**

**Brought by Plaintiff on Behalf of Herself and the Class**

134. Plaintiff, on behalf of herself and the Class members, realleges and incorporates by reference all previous paragraphs.

135. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty (40) hours in any workweek.

136. Throughout the Class Period, Defendants willfully, regularly, and repeatedly failed to pay Plaintiff and the Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

137. As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial; pre- and post-judgment interest; and costs and attorneys' fees.

**THIRD CAUSE OF ACTION**

**(New York State Wage Notice and Statement Requirements, N.Y. Lab. Law §§ 195, 198)**

**Brought by Plaintiff on Behalf of Herself and the Class**

138. Plaintiff, on behalf of herself and the Class members, realleges and incorporates by reference all previous paragraphs.

139. Defendants did not provide Plaintiffs and the members of the Class with wage notices and statements that contained the required information under N.Y. Lab. Law § 195.

140. As a result of Defendants' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages including penalties pursuant to N.Y. Lab. Law § 198 and costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**

**(NYLL Retaliation, N.Y. Lab. Law § 215)**

**Brought by Plaintiff Individually**

141. Plaintiff realleges and incorporates by reference all previous paragraphs.

142. Defendants willfully and unlawfully retaliated against Plaintiff because she opposed wage theft by (i) making changes to her schedule, requiring her to work at times when her supervisor knew she was unavailable; (ii) requiring her to remain under the supervision of the individual about whom she had made formal complaints; and (iii) ultimately terminating her employment.

143. In retaliating against Plaintiff, Defendants knowingly acted in deliberate disregard of Plaintiff's rights.

144. Defendants' conduct violated the NYLL § 215.

145. As a result of Defendants' unlawful conduct, Plaintiff is entitled to damages in an amount to be determined at trial, including compensatory damages for monetary losses and emotional distress, liquidated damages, punitive damages, front pay, attorneys' fees, costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION

### (Race and/or Color Discrimination under NYS Executive Law § 296)

### Brought by Plaintiff Individually

146. Plaintiff realleges and incorporates by reference all previous paragraphs.

147. As described above, Defendants have discriminated against Plaintiff on the basis of race and/or color in violation of the NYSHRL by (i) giving her a discriminatory performance review in which her appearance was a subject of criticism in ways that no other employee's was—specifically, she was encouraged to smile more; (ii) making changes to her schedule, requiring her to work at times when her supervisor knew she was unavailable; (iii) routinely expressing negative and stereotypical views of Black people, and particularly Black women and

rejecting positive associations with Black people; (iv) ignoring and minimizing complaints about discriminatory behaviors; (v) ultimately terminating her employment.

148. Plaintiff was subjected to inferior terms, conditions, and privileges of employment because of her race.

149. Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to race and/or color. Each Defendant has actually participated in and aided and abetted the discriminatory conduct of the other Defendants.

150. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, economic damages, loss of opportunity, loss of reputation and mental anguish for which she is entitled to an award of damages.

151. Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of NYSHRL for which Plaintiff is entitled to an award of punitive damages.

**SIXTH CAUSE OF ACTION**

**(Harassment and Hostile Work Environment on the Basis of Race and/or Color under NYS Executive Law § 296)**

**Brought by Plaintiff Individually**

152. Plaintiff realleges and incorporates by reference all previous paragraphs.

153. As described above, Defendants have subjected Plaintiff to harassment and a hostile work environment on the basis of race and/or color in violation of the NYSHRL by routinely making derogatory comments and jokes about Black people and expressing negative and stereotypical views of Black people, and particularly Black women, and rejecting positive associations with Black people.

154. Defendants subjected Plaintiff to a workplace permeated with discriminatory intimidation, ridicule, and insult.

155. Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to race and/or color. Each Defendant has actually participated in and aided and abetted the discriminatory conduct of the other Defendants.

156. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, economic damages, loss of opportunity, loss of reputation and mental anguish for which she is entitled to an award of damages.

157. Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of NYSHRL for which Plaintiff is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**

**(Race and/or Color Discrimination and Harassment/Hostile Work Environment under the Administrative Code of the City of New York § 8-107)**

**Brought by Plaintiff Individually**

158. Plaintiff realleges and incorporates by reference all previous paragraphs.

159. As described above, Defendants have discriminated against Plaintiff on the basis of race and/or color in violation of the NYCHRL by (i) giving her a discriminatory performance review in which her appearance was a subject of criticism in ways that no other employee's was—specifically, she was encouraged to smile more; (ii) making changes to her schedule, requiring her to work at times when her supervisor knew she was unavailable; (iii) routinely expressing negative and stereotypical views of Black people, and particularly Black women and

rejecting positive associations with Black people; (iv) ignoring and minimizing complaints about discriminatory behaviors; (v) ultimately terminating her employment.

160. Defendants have subjected Plaintiff to harassment and a hostile work environment on the basis of race and/or color in violation of the NYCHRL by routinely making derogatory comments and jokes about Black people and expressing negative and stereotypical views of Black people, and particularly Black women, and rejecting positive associations with Black people.

161. Plaintiff was treated less well than other Triumph employees, and subjected to inferior terms, conditions and privileges of employment, on the basis of her race.

162. Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to race and/or color. Each Defendant has actually participated in and aided and abetted the discriminatory conduct of the other Defendants.

163. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, economic damages, loss of opportunity, loss of reputation and mental anguish for which she is entitled to an award of damages.

164. Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

**(Sex Discrimination under NYS Executive Law § 296)**

**Brought by Plaintiff Individually**

165. Plaintiff realleges and incorporates by reference all previous paragraphs.

166. As described above, Defendants have discriminated against Plaintiff on the basis of

sex in violation of the NYSHRL by (i) giving her a discriminatory performance review in which her appearance was a subject of criticism in ways that no other employee's was—specifically, she was encouraged to smile more; (ii) making changes to her schedule, requiring her to work at times when her supervisor knew she was unavailable; (iii) routinely making sexually explicit jokes and comments that demeaned women generally and plaintiff specifically; (iv) ignoring and minimizing complaints about discriminatory behaviors; (v) ultimately terminating her employment.

167. Plaintiff was subjected to inferior terms, conditions, and privileges of employment because of her sex.

168. Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to sex. Each Defendant has actually participated in and aided and abetted the discriminatory conduct of the other Defendants.

169. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, economic damages, loss of opportunity, loss of reputation and mental anguish for which she is entitled to an award of damages.

170. Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of NYSHRL for which Plaintiff is entitled to an award of punitive damages.

**<u>NINTH CAUSE OF ACTION</u>**

**(Harassment/Hostile Work Environment under NYS Executive Law § 296)**

**Brought by Plaintiff Individually**

171. Plaintiff realleges and incorporates by reference all previous paragraphs.

172. As described above, Defendants have subjected Plaintiff to harassment and a hostile work environment on the basis of sex in violation of the NYSHRL by routinely making sexually explicit jokes and comments that demeaned women generally and Plaintiff specifically.

173. Defendants subjected plaintiff to a workplace permeated with discriminatory intimidation, ridicule, and insult.

174. Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to sex. Each Defendant has actually participated in and aided and abetted the discriminatory conduct of the other Defendants.

175. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, economic damages, loss of opportunity, loss of reputation and mental anguish for which she is entitled to an award of damages.

176. Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of NYSHRL for which Plaintiff is entitled to an award of punitive damages

**TENTH CAUSE OF ACTION**

**(Sex Discrimination and Harassment/Hostile Work Environment under the Administrative Code of the City of New York § 8-107)**

**On Behalf of Plaintiff Individually**

177. Plaintiff realleges and incorporates by reference all previous paragraphs.

178. As described above, Defendants have discriminated against Plaintiff on the basis of sex in violation of the NYCHRL by (i) giving her a discriminatory performance review in which her appearance was a subject of criticism in ways that no other employee's was—specifically, she was encouraged to smile more; (ii) making changes to her schedule, requiring her to work at

times when her supervisor knew she was unavailable; (iii) routinely making sexually explicit jokes and comments that demeaned women generally and Plaintiff specifically; (iv) ignoring and minimizing complaints about discriminatory behaviors; (v) ultimately terminating her employment.

179. Defendants have subjected Plaintiff to harassment and a hostile work environment on the basis of sex in violation of the NYCHRL by routinely making sexually explicit jokes and comments that demeaned women generally and Plaintiff specifically.

180. Plaintiff was treated less well than other Triumph employees, and subjected to inferior terms, conditions and privileges of employment, on the basis of her sex.

181. Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to sex. Each Defendant has actually participated in and aided and abetted the discriminatory conduct of the other Defendants.

182. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, economic damages, loss of opportunity, loss of reputation and mental anguish for which she is entitled to an award of damages.

183. Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## ELEVENTH CAUSE OF ACTION

**(Retaliation in violation of the NYS Executive Law § 296)**

**On Behalf of Plaintiff Individually**

184. Plaintiff realleges and incorporates by reference all previous paragraphs.

185. As described above, Defendants have retaliated against Plaintiff for opposing discrimination and harassment on the basis of race/color and sex by (i) making changes to her schedule, requiring her to work at times when her supervisor knew she was unavailable; (ii) requiring her to remain under the supervision of the individual about whom she had made formal complaints; (iii) ridiculing and belittling her in the workplace and to her colleagues for expressing distress; and (iv) ultimately terminating her employment.

186. Defendants willfully and unlawfully retaliated against Plaintiff because she opposed discrimination and harassment on the basis of race and/or color and/or sex.

187. In retaliating against Plaintiff, Defendants knowingly acted in deliberate disregard of Plaintiff's rights.

**<u>TWELFTH CAUSE OF ACTION</u>**

**(Retaliation in violation of the Administrative Code of the City of New York § 8-107)**

**On Behalf of Plaintiff Individually**

188. Plaintiff realleges and incorporates by reference all previous paragraphs

189. Defendants have retaliated against Plaintiff for opposing discrimination and harassment on the basis of race/color and sex by (i) making changes to her schedule, requiring her to work at times when her supervisor knew she was unavailable; (ii) requiring her to remain under the supervision of the individual about whom she had made formal complaints; (iii) ridiculing and belittling her in the workplace and to her colleagues for expressing distress; and (iv) ultimately terminating her employment.

190. Defendants willfully and unlawfully retaliated against Plaintiff because she opposed discrimination and harassment on the basis of race and/or color and/or sex.

191. In retaliating against Plaintiff, Defendants knowingly acted in deliberate disregard of Plaintiff's rights.

## THIRTEENTH CAUSE OF ACTION

**(Intersectional Discrimination: Race/Color and/or Sex Discrimination)**
**Brought by Plaintiff Individually**

192. Plaintiff realleges and incorporates by reference all previous paragraphs.

193. The actions of Defendants as described herein constitute intersectional discrimination based upon race and/or color in violation of NYS Executive Law § 296 and the Administrative Code of the City of New York § 8-107, and/or based upon sex in violation of NYS Executive Law § 296 and the Administrative Code of the City of New York § 8-107.

194. Defendants have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to race and/or color and/or sex. Each Defendant has actually participated in and aided and abetted the discriminatory conduct of the other Defendants.

195. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, economic damages, loss of opportunity, loss of reputation and mental anguish for which she is entitled to an award of damages.

196. Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of NYSHRL for which Plaintiff is entitled to an award of punitive damages.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Ms. Freeman as Representative of the FLSA Collective Plaintiffs;

C. Designation of this action as a class action pursuant to F.R.C.P. 23;

D. Designation of Ms. Freeman as Representative of the Class;

E. An award of damages, according to proof, including liquidated damages, penalties, and punitive damages, to be paid by Defendants;

F. Penalties available under applicable laws;

G. Costs of action incurred herein, including expert fees;

H. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. Law §§ 198, 663, N.Y. Exec. Law § 297(10), N.Y.C. Admin. Code § 8-502(g), and other applicable statutes;

I. Pre-judgment and post-judgment interest, as provided by law; and

J. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: New York, New York
October 27, 2025

Respectfully submitted,

QK LEGAL PLLC

By: /s/ Megan Quattlebaum

Megan Quattlebaum
65 High Ridge Road, Suite 150
Stamford, CT 06905
Tel: (203) 349-3216